FRANK STEINROCK, PLAINTIFF-RESPONDENT, v. HART-
FORD ACCIDENT AND INDEMNITY COMPANY, DE-
FENDANT-APPELLANT.

Argued February 8, 1935—Decided May 17, 1935.

For the appellant, *William H. Campbell, Jr.*

For the respondent, *James F. Patten.*

The opinion of the court was delivered by

CAMPBELL, CHANCELLOR. The proofs in the case seem to
be: Frank Van Syckle conducted a garage and Dodge auto-
mobile agency at Perth Amboy and the appellant company
was his insurance carrier; his brother, Harold, was the
manager of the business and in entire charge thereof; no
one except he and Frank had authority to pass upon and
approve the sale or purchase of automobiles.

On Saturday, May 2d, 1931, about five P. M., one Charles
Stevenson presented himself at the Van Syckle agency as a
prospective purchaser of a Dodge car. Neither Frank nor
Harold Van Syckle was present. Stevenson talked to and
had all his dealings with one Kehrer, a salesman. He wished
to turn in, as part payment on a new Dodge car, an Essex
car. Kehrer talked to Harold Van Syckle over the telephone
respecting the offer and proposition made by Stevenson, and
while Van Syckle did not give his approval to the proposed
transaction he did give permission to Kehrer to turn over
to and put Stevenson in possession of a Dodge car. No defi-

nite or fixed terms of sale were settled upon at that time. Stevenson left his Essex car at Van Syckle's place of business. There appears to have been some uncertainty as to whether Stevenson desired to purchase a six-cylinder or an eight-cylinder Dodge. The automobile he was permitted to take was a six-cylinder car. Before permitting Stevenson to take the car Kehrer required him to sign an order for it and a chattel mortgage in blank and a note, likewise in blank, for the first payment. Selection of the particular car to be purchased and the final terms of purchase appear to have been postponed until the following Monday morning when Harold Van Syckle would be present and could pass upon the proposed transaction.

The license plates of Stevenson's Essex car were transferred to the Dodge and Stevenson left the Van Syckle place with the Dodge car about six-thirty P. M.

On Monday, May 4th, 1931, at about three A. M., Stevenson, operating this Dodge car, struck and injured one Frank Steinrock.

On the same day at about nine A. M., Stevenson saw and talked to Harold Van Syckle, for the first time, respecting the sale of a Dodge car; his offer of the preceding Saturday, May 2d, was accepted; Frank Van Syckle executed to him a bill of sale, and the chattel mortgage and other instruments signed in blank by Stevenson on the preceding Saturday were filled out and executed by Van Syckle.

The bill of sale and chattel mortgage were dated as of Monday, May 4th, and executed by Van Syckle between nine and ten A. M. The bill of sale was filed with the motor vehicle department May 5th, and on the same day the chattel mortgage was recorded in the Middlesex county clerk's office.

Thereafter Steinrock, the respondent, brought suit against Stevenson, individually, and as agent of Van Syckle, for damages resulting from the happening of May 4th. He was nonsuited so far as his cause of action ran against Stevenson as agent of Van Syckle, but he obtained a verdict and judgment against Stevenson and an execution under such judgment was returned unsatisfied.

Frank Van Syckle's contract of insurance with appellant contained a provision as required by section 10, chapter 116, *Pamph. L.* 1929, *p.* 199 (*Cum. Supp. Comp. Stat.* 1925-1930, *p.* 1059, § 135-128). That provision is as follows: "This policy is further extended to cover, as an additional assured, any person while riding in or *legally* operating any automobile owned by the assured named in Declaration No. 1, or any person, firm, or corporation legally responsible for the operation of such automobile where the disclosed and actual use of the automobile is for pleasure and ordinary business purposes and the automobile is being so used with the permission of the named assured; but the coverage provided under this paragraph *shall under no circumstances apply to any automobile while being purchased from the named assured under any installment payment agreement and in which the named assured holds title in whole or in part."*

Failing in satisfying his judgment against Stevenson, the respondent, Steinrock, brought suit against Van Syckle's insurance carrier, the appellant, under the foregoing provision of the insurance contract upon the idea and theory that at the time of the occurrence on Monday, May 4th, 1931, at three A. M., Frank Van Syckle was the owner of the car although it was in the possession of and being operated by Stevenson.

Upon the trial of such action Steinrock obtained a verdict against the appellant, insurance company, and from the judgment entered thereon this appeal has been taken.

In addition to the foregoing the following proofs appear: that on May 4th or 5th, after the accident, Harold Van Syckle urged the appellant, insurance company, to issue to Stevenson a policy of insurance covering the particular Dodge car against property damage and liability, from May 2d, and that Stevenson seems, in some manner to have become insured against collision, fire and theft of the Dodge car from May 2d by a policy of the Merchants Indemnity Company, and on May 25th, as owner, executed a proof of loss and a draft of that insurance company was on August 24th issued to Frank Van Syckle for himself and the account of Stevenson

for $346.57 covering the damages to the Dodge car as to which damages and the cost of repair Van Syckle had submitted an estimate.

It further appears that Stevenson furnished the appellant, insurance company, with two statements dated May 27th, 1931, and July 12th, 1932, which were respectively *Exhibits D-2* and *D-3* admitted in evidence. *Exhibit D-2* states that on the afternoon of May 2d, 1931, he went to the showrooms of Van Syckle at Perth Amboy, there talked to the salesman, Kehrer, respecting the purchase of a Dodge car including an Essex trade-in; was shown a Dodge sedan six and upon being given an allowance of $200 on his Essex car he entered into an agreement to purchase the Dodge car; that Kehrer telephoned to Harold Van Syckle and getting from him an approval as to the proposed allowance for the Essex car papers were drawn for sale and delivery of the Dodge car and signed by him that evening; that there was no cash in the transaction, but the car allowance of $200, a note for the down payment and the balance to be taken care of through a finance company; that he asked Kehrer if the Dodge car was fully insured and he said he would take care of it, that the car would be fully insured; that then the Dodge car was serviced, and leaving his Essex at Van Syckle's place he departed with the Dodge car about eight P. M., and operated it the next day (Sunday) and night and on returning from Elizabeth on Monday about three-thirty A. M., May 4th, while riding alone, proceeding through Woodbridge on Amboy avenue at a rate of twenty-five miles per hour, headlights tilted down, night clear, roadway dry, concrete from curb to curb, keeping to the right of the road the collision with Steinrock occurred.

*Exhibit D-3* states that on Saturday, May 2d, 1931, he called at the salesroom of Van Syckle in Perth Amboy and talked to the salesman, Kehrer, respecting the purchase of a Dodge six car and agreed to purchase one standing on the salesroom floor, Kehrer agreeing to accept his Essex car as a down payment; that he then signed papers, the nature of which he did not recall; that the registration plates on his

Essex car were transferred to the Dodge by Kehrer, or some one in the shop and at the time of this transaction "it was fully my intention to purchase the Dodge six-cylinder sedan."

There are several grounds for reversal but they may be condensed into three points:

1. That at the time of the happening and the injury to Steinrock, Stevenson was the actual and legal owner of the Dodge car and therefore the policy of the appellant did not apply and appellant could not legally be called upon to satisfy the judgment of Steinrock against Stevenson.

2. That at the time of the happening there had been a delivery of the Dodge car by Van Syckle to Stevenson under a conditional installment agreement and, therefore, the policy of the appellant, by its expressed terms did not apply.

3. That if, at the time of the happening, Stevenson was not the owner of the car, or did not possess it under a conditional installment agreement, he was, nevertheless, operating it illegally and therefore there could be no recovery against the appellant under its policy.

We conclude that the appellant cannot prevail and succeed in reversing the judgment against it for any of the reasons so urged.

Points 1 and 2 are so closely related that under the proofs they should be considered together. Both can and are disposed of adversely to the contention of the appellant by the statement that we find the proofs to be in such a state of conflict that a jury question was presented, and it was presented, and it would have been error to have directed a verdict in favor of the defendant-appellant. There was no error in refusing to charge the requests of the defendant-appellant because to have done so would, as a practical result, have removed from the jury the determination of the disputed facts and would have been tantamount to a direction of verdict in favor of the defendant.

As before indicated we have reached the conclusion that the matter urged under point 3 is, in law, and in fact, unsound.

Here it is urged that, at the time of the happening, the

car was being illegally operated because it had no authorized license tags thereon but had those transferred from the Essex car.

It is urged that this was in violation of section 13, subdivision 2 of chapter 208 (*Pamph. L.* 1921; *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 1993, § 135-62(2), and so it was, and it is urged that this is the only provision of the Motor Vehicle act which is defined as "illegal driving."

The provision of the act of 1921, *supra,* is in the following language (section 13, subdivision 2) :

"No person shall drive a motor vehicle, the owner of which vehicle shall not have complied with the provisions of this act concerning the proper registration and identification of the same ; nor shall any person drive a motor vehicle which shall display on the front or back thereof a fictitious number or a number other than that designated for such motor vehicle in the New Jersey registration certificate of such motor vehicle."

The original act does not entitle the section "Illegal Driving" while the section as it appears in 1 *Cum. Supp. Comp. Stat., p.* 1993, is so entitled. This, however, is simply a title given by the revisers and compilers.

It is true that while this section does not, in words, declare that it shall be illegal to drive a car under the conditions therein recited, nevertheless, the only construction that can be placed upon its language is that such prohibited operation is illegal.

Section 14 of the same act sets up fourteen specifically prohibited acts, declaring them to be misdemeanors, punishable by fine or imprisonment. The language otherwise is similar to that employed in section 13, *supra.*

This, appellant insists, requires a distinction to be made as to the acts prohibited by section 14 and those referred to in section 13, because the former are penal and the latter are not.

If such a distinction can be said to be of any legal importance, it does not, in fact, exist, because section 34 (*Pamph. L.* 1921, *p.* 683, as amended by *Pamph. L.* 1924, *pp.* 445,

462; 1 *Cum. Supp. Comp. Stat., p.* 2007), provides a penalty for the violation of section 13, *supra,* by fine and imprisonment.

Appellant further urges that *Osborn* v. *New Amsterdam Casualty Co.,* 111 *N. J. L.* 358, does not apply, because:

1. In that case the automobile was lawfully upon the highway and, in the present case it was not, because of the provisions of section 13. *Pamph. L.* 1921, *supra.*

2. The operation of the car in the Osborn case was not illegal but only penal; and

3. In the Osborn case the policy expressly provided that all the terms and conditions applicable to the owner applied to the additional assured and in the present case there is no such provision.

We are unable to make any such distinctions.

In the Osborn case we held that the language "legally operating" was to be construed by reference to the operations particularized in the "Exclusions" contained in the contract of insurance.

So here there must be the same inquiry and "Exclusions," paragraph D of the policy will be searched in vain for any prohibition against, or making the driving of a car illegal because of the use of unauthorized license plates.

Finding no error, the judgment under review is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.